EVA E. WICKERT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wickert v. Commissioner
Docket No. 34899-83.
United States Tax Court
T.C. Memo 1986-277; 1986 Tax Ct. Memo LEXIS 326; 51 T.C.M. (CCH) 1373; T.C.M. (RIA) 86277; July 7, 1986; As Amended July 8, 1986 David G. Hartmann and William G. Line, for the petitioner. J. Anthony Hoefer, for the respondent. FAY
MEMORANDUM OPINION FAY, Judge: This case is before the Court on petitioner's motion for an award of reasonable litigation costs pursuant to Rule 231 and section 7430. [1] The issues for decision are (1) whether petitioner should be awarded reasonable litigation costs pursuant to section 7430, and if so, (2) whether the amount of litigation costs requested by petitioner in her motion is reasonable. *329 Petitioner, Eva E. Wickert, resided in West Point, Nebraska, when she filed her petition herein. By statutory notice of deficiency dated September 20, 1983, respondent determined deficiencies in petitioner's Federal income tax for 1979 and 1980 in the amounts of $2,162 and $1,700 respectively.Petitioner filed a petition with the Court on December 15, 1983. The instant case was calendared for trial at the Court's trial session at Omaha, Nebraska, beginning on December 17, 1984. At the call of calendar, the parties filed with this Court a stipulation of settlement whereby respondent conceded the only adjustment in the notice of deficiency, concerning the characterization as alimony of amounts received by petitioner, and all the deficiencies he determined arising therefrom with respect to petitioner's Federal income tax liability for 1979 and 1980. Petitioner filed on that same day pursuant to section 7430 a motion for an award of reasonable litigation costs in the amount of $4,240.64. Thereafter, respondent filed a notice of objection to petitioner's motion and petitioner filed a reply to such objection. The underlying controversy arose from the characterization of payments *330 made by petitioner's former spouse Charles R. Wickert (herein "Mr. Wickert") to petitioner pursuant to a decree of divorce entered on February 24, 1979, by the District Court of Cuming County, Nebraska. Such decree provided for the payment to petitioner of the sum of $103,000 which is described in the decree as representing petitioner's interest in a farm and in the personal property of petitioner and Mr. Wickert. Such payment was to be made in eleven annual installments; the first installment in the sum of $30,000 was due on March 1, 1979, and the remainder payable in equal installments with the last installment due on March 1, 1989. It was stated in the decree that such payment was "to be construed as a property settlement and not as alimony." Nevertheless, for 1979 and 1980, Mr. Wickert deducted the installments paid as alimony pursuant to section 215. Petitioner did not include such amounts as income in her returns for such years. Faced with the inconsistent treatment of the same item, respondent issued notices of deficiency on September 20, 1983 to both petitioner and to Mr. Wickert wherein adjustments were made to disallow the deduction to Mr. Wickert and to include such *331 amount as income with respect to petitioner. Petitioner timely filed a petition with this Court on December 15, 1983. Mr. Wickert failed to file a petition within the time prescribed under section 6213. Respondent filed an answer to the petition in this case on February 15, 1984. On February 13, 1984, respondent's district counsel referred the instant case to respondent's appeals office in Omaha, Nebraska for consideration of settlement. Respondent's appeals officer responsible for the instant case determined at that time that Mr. Wickert had failed to file a petition with this Court within the time allowed, and decided that the inconsistent treatment of the payments could be resolved in petitioner's favor. On February 23, 1984, eight days after the answer was filed in the instant case, respondent's appeals officer forwarded to petitioner a proposed stipulated decision which reflected that there was no deficiency in petitioner's Federal income tax for the years in issue. The covering letter enclosed with the proposed stipulated decision stated that such document reflected "the agreement we reached during consideration" of the case, but that the settlement had not yet been approved, *332 and that petitioner would be notified ypon approval or disapproval of such settlement. On March 12, 1984, petitioner's counsel informed respondent by letter that he believed petitioner was entitled to an award of litigation costs; thereafter, on March 20, 1984, petitioner's counsel forwarded to respondent's appeals officer the proposed stipulated decision executed by petitioner. On May 4, 1984, respondent's appeals officer indicated in writing to petitioner's counsel that respondent did not believe the government had acted unreasonably and therefore would not agree to an award of attorney's fees. A conference was held on May 9, 1984, wherein respondent's appeals officer advised petitioner that respondent would concede the adjustment in the notice of deficiency. On June 28, 1984, respondent's appeals officer notified petitioner's counsel that since petitioner was requesting an award of litigation costs, the stipulated decision executed by petitioner and sent to respondent in March 1984, was procedurally inappropriate and that respondent's district counsel would prepare an appropriate stipulation in accordance with Rule 231. Thereafter, on July 19, 1984, respondent's appeals officer *333 referred the instant case to respondent's district counsel indicating that the government would concede the alimony issue, and that petitioner intended to pursue the recovery of litigation costs. On that same day, respondent's appeals officer sent a form letter to petitioner's counsel, stating that the instant case had been referred to district counsel for preparation for trial. Such letters were routinely sent by respondent's appeals office for the sole purpose of apprising taxpayers of the status of their cases and did not constitute a representation from respondent's counsel as to the status of the case in the hands of respondent's counsel. Due to the relative novelty of section 7430 and Rules 230 through 232, respondent's district counsel encountered difficulty in drafting a document in compliance with Rule 231. [2] On November 19, 1984, respondent once again contacted petitioner's counsel and reiterated his intent to concede the case in favor of petitioner. On November 21, 1984, respondent's district counsel forwarded a proposed stipulation of settlement to petitioner's counsel. Petitioner's counsel found such proposed stipulation unacceptable, and in turn, sent his own proposed *334 version of a stipulation of settlement to respondent. The parties finally agreed on yet a third form of the stipulation on December 5, 1984. Such stipulation was executed and filed with the Court on December 17, 1984. On her Federal income tax return for 1979, petitioner claimed the earned income *335 credit pursuant to section 43. [3] Respondent determined that such a claim was improper and arranged for disallowance of the credit prior to the issuance of the notice of deficiency. [4] Respondent then directed that a partial assessment be made. [5] During the period from December 30, 1983 to August 24, 1984, petitioner received three collection letters from respondent with respect to the earned income credit disallowance. The last of such letters stated that respondent was authorized by law to file a notice of Federal tax lien and seize petitioner's property, wages or other assets to satisfy her unpaid tax. After the receipt of the first of such collection letters petitioner informed respondent that a petition had been filed in the instant case and that further collection attempts should be terminated. Respondent's appeals office then notified his collection division to halt collection efforts pending the disposition of the instant case. Despite directions from respondent's appeals office, respondent's collection division could not stop the issuance of collection letters due to computer problems. Petitioner continued to receive computerized form letters. Petitioner was also visited *336 by a revenue officer in connection with the collection effort. The issues are whether petitioner should be awarded reasonable litigation costs and, if so, whether the amount of costs requested *337 by petitioner is reasonable. Petitioner, as the moving party, has the burden of proof. Rule 232(e). We first address the issue of whether petitioner should be awarded reasonable litigation costs pursuant to section 7430. Section 7430 provides for an award of reasonable litigation costs to the prevailing party of a civil proceeding against the United States provided certain conditions are met. [6] The determination of who is a prevailing party is to be made either by the Court or by agreement of the parties. Sec. 7430(c)(2)(B). An award of litigation costs is discretionary with the Court. H. Rept. 97-404 (1981) at 12. To be awarded reasonable litigation costs, petitioner must show that she has exhausted the administrative remedies available to her within the Internal Revenue Service and that she is the prevailing party. Secs. 7430(a), 7430(b). Respondent has conceded herein that petitioner has exhausted the administrative remedies available to her. What remains, therefore, is for petitioner to show that she is the prevailing party. To do so, petitioner must prove that respondent's position *338 in the civil proceeding was unreasonable, and that she has substantially prevailed with respect to the amount in controversy or the most significant issue presented. Sec. 7430(c)(2)(A); Rule 232(e). *339 We first determine whether petitoner has established that respondent's position in the civil proceeding was unreasonable within the meaning of section 7430(c)(2)(A)(i). Although petitioner would have us examine respondent's conduct during the pre-petition administrative phase, his conduct after the filing of the petition, as well as his conduct with respect to the collection efforts regarding the earned income credit for 1979, we have held that the clear meaning of the statute requires us to examine the reasonableness of respondent's position during the litigation, that is to say, from the time of the filing of the petition in the case. Baker v. Commissioner,83 T.C. 822, 827 (1984), vacated and remanded on other grounds 787 F.2d 637 (D.C. Cir. 1986). See also Wasie v. Commissioner, 86 T.C.     (1986). Hence, in the instant case, we only examine respondent's actions after December 15, 1983. We hold, therefore, that respondent's conduct before December 15, 1983, the day the petition was filed herein, has no bearing on our determination under section 7430. *340 In determining if respondent's position is unreasonable, we must take into account all the facts and circumstances surrounding the proceeding. Baker v. Commissioner,83 T.C. at 828. Our inquiry involves a review of first, the legal basis for respondent's position ans second, certain actions taken during litigation. Baker v. Commissioner,83 T.C. at 829. Such determination should be made on the basis of the facts and legal precedents relating to the case as revealed in the record. H. Rept. 97-404 at 12. Some of the factors which might be considered are: (1) Whether the government used the costs and expenses of litigation against its position to extract concessions from the taxpayer that were not justified under the circumstances of the case; (2) Whether the government pursued the litigation against the taxpayer for purposes of harassment or embarrassment, or out of political motivation; and (3) other factors as the Court finds relevant. H. Rept. 97-404, at 12; DeVenney v. Commissioner,85 T.C. 927 (1985). Consistent with the foregoing, we first examine the legal basis for respondent's position in the instant case. Respondent *341 based the proposed deficiency on the inconsistent treatment by petitioner and Mr. Wickert with respect to the same items. Section 71, as in effect during the years in issue, provides for inclusion in income by the wife of certain payments received in discharge of a legal obligation imposed on the husband by virtue of the marital or family relationship. See sec. 71(a)(1). Section 215, as in effect during the years in issue, provides a corresponding deduction to the payor spouse of such amount. See secs. 215(a); 215(b). Only payments which are "periodic payments" are within the purview of section 71. Sec. 71(a)(1); sec. 1.71-1(d)(1), Income Tax Regs. Where the principal sum of the installment payments made to the wife is specified in the decree of divorce, such payments are ordinarily not "periodic payments" unless such principal sum is payable over a period ending more than 10 years from the date of the divorce decree. Sec. 71(c)(2); sec. 1.71-1(d)(2), Income Tax Regs. The ultimate inquiry is whether such payment was made because of the family or marital relationship in recognition of the general obligation to support made specific *342 by the divorce decree, instrument, or agreement. Sec. 71(a); sec. 1.71-1(b)(4), Income Tax Regs.
Petitioner cited no authority for her argument that respondent's legal position in the civil proceeding was unreasonable. As support for his position, respondent relied on Schottenstein v. Commissioner,75 T.C. 451 (1980), wherein this Court held that periodic payments made by the husband to his former wife were alimony payments notwithstanding that the payments were labeled as being made "by way of property settlement" in the separation agreement and were intended and agreed by the parties to be treated as a property settlement. Schottenstein v. Commissioner,75 T.C. 451 (1980). We held there that the characterization of the payment is a factual question which must be resolved from the surrounding facts and circumstances and that we are not bound by the labels used in the spouses' written agreements or in the divorce decrees. Schottenstein v. Commissioner,75 T.C. at 456 and 460. We further held that the respective *343 property interests of the parties and the intent of the parties are important in determining if the payments were made in recognition of the general obligation to support rather than a division of property. Schottenstein v. Commissioner,75 T.C. at 456. The principles in Schottenstein v. Commissioner,75 T.C. 451 (1980), have been cited by this Court in subsequent cases. See, e.g., Benedict v. Commissioner,82 T.C. 573 (1984); Jacklin v. Commissioner,79 T.C. 340 (1982); Beard v. Commissioner,77 T.C. 1275 (1981). In the instant case, the payments provided in the divorce decree may be paid as late as March 1, 1989, more than ten years from February 24, 1979, the date the divorce decree was entered by the Court. Therefore, pursuant to section 71(c)(2) and section 1.71-1(d)(2), Income Tax Regs., respondent was not unreasonable in questioning the includibility of such payment in petitioner's income. Furthermore, an examination of petitioner's property interest under state law reveals that the division of property and the award of alimony upon dissolution of marriage *344 depends on the facts of each case and the equities involved. [7]Neb. Rev. Stat. section 42-365 (1984); Lord v. Lord,213 Neb. 557, 330 N.W.2d 492 (1983); Ragains v. Ragains,204 Neb. 50, 281 N.W.2d 516 (1979); Steele v. Steele,201 Neb. 549, 270 N.W.2d 903 (1978). Moreover, petitioner and Mr. Wickert were in disagreement as to the characterization of the payments, as evidenced by their inconsistent treatment thereof. Therefore, respondent could not have reasonably ascertained the intent of the parties with respect to the payments at the time petitioner filed her petition in the instant case. Respondent did no more than act to protect the revenue when faced with a "whipsaw" situation. In light of the conflicting positions taken by Mr. Wickert and petitioner, and in view of our decision in Schottenstein v. Commissioner,75 T.C. 451 (1980), we hold that petitioner failed to prove that respondent's legal position in the civil proceeding was unreasonable.
*345 We now turn to respondent's actions to determine if petitioner has otherwise proved that respondent's position in the civil proceeding was unreasonable. We note at the outset that concession of a case does not mean that the conceding party's position in the civil proceeding was unreasonable. Wasie v. Commissioner, 86 T.C.     (1986); Baker v. Commissioner,83 T.C. at 828. Petitioner charges respondent with harrassment and unreasonable delay in his actions connected with conceding the only adjustment in the case. If we find that respondent's officers acted in a normal and orderly fashion, it would be inappropriate to award costs. [8] However, if they were unreasonably intransigent, then an award of costs would be warranted. Baker v. Commissioner,787 F.2d 637 (D.C. Cir. 1986), vacating and remanding 83 T.C. 822 (1984). We may consider whether respondent used the costs and expenses of litigation to extract concessions from petitioner or pursued the litigation against petitioner for purposes of harrassment or embarrassment. H. Rept. *346 97-404 at 12. For the following reasons, we find that respondent's actions in connection with his concession in the instant case were not unreasonable. Petitioner argues that respondent was unreasonable in filing an answer in the instant case. We note, however, that it is respondent's usual practice to file an answer in a case docketed with this Court and then refer the case to his appeals office for consideration of settlement pursuant to Rev. Proc. 82-42, 1982-2 C.B. 761. [9]
That respondent indicated a willingness to concede the sole issue in the notice of deficiency as early as some two and a-half months after the petition was filed, and almost immediately after filing his answer, as evidenced by his forwarding a proposed stipulated decision to petitioner, undermines petitioner's charge of unreasonableness. Although respondent did not forward the final document reflecting his concession until nine months after his first indication of a willingness to concede, there was no indication of his ever wavering from such a posture. *347 In fact, the only subject of dispute between the parties after February 1984 was petitioner's entitlement to reasonable litigation costs. The passage of time before respondent prepared the stipulation of settlement was primarily due to counsel's lack of familiarity with the relatively new procedures required by section 7430 and Rules 230 through 232. Respondent forwarded to petitioner a proposed stipulation document as early as February 23, 1984, eight days after the filing of the answer. On May 9, 1984, respondent again reiterated his intention to concede the case in a conference with petitioner's counsel. Petitioner's reliance on the form letter of July 19, 1984, sent by respondent which stated that the file in the instant case had been sent to district counsel for preparation for trial, is misplaced. As we stated above, such letters are routinely sent by respondent to apprise taxpayers of the status of the case and do not constitute a refusal to concede. Furthermore, petitioner's failure to file a motion to continue her case from the December 17, 1984, Omaha, Nebraska trial session belies her claim of distress caused by respondent's letter of July 19, 1984. We note that petitioner's *348 counsel had as much right as respondent's counsel to prepare a stipulation of settlement. We can find no provision in our Rules which prevents either party from preparing such a stipulation. That respondent was acting too slowly to his liking should have prompted petitioner's counsel to draft his own version of a proposed stipulation of settlement. Petitioner could have initiated the process yet did not do so. Petitioner's counsel was not incapable of preparing such a document, however. Once respondent prepared the proposed stipulation in November, petitioner's counsel did not hesitate to substitute his own version of the stipulation therefor and thereafter a "battle of the forms" ensued. We find that petitioner has failed to prove that through respondent's actions relating to the concession of the instant case respondent intended to extract unjustified concessions from petitioner, or that respondent pursued the litigation to harrass or embarrass petitioner. Petitioner also failed to prove that such actions otherwise constituted an unreasonable position maintained by respondent in the civil proceeding. On the contrary, the record shows that respondent had acted in a reasonable *349 manner. We now turn to petitioner's final argument that respondent's mailing of the collection letters after the filing of the petition constituted unreasonableness in his position and that petitioner is entitled to litigation costs thereby. Section 7430 provides for reasonable litigation costs in certain cases where the government's position "in the civil proceeding" was unreasonable. Sec. 7430(c)(2)(i). The term "civil proceeding" appears in both section 7430(a) as well as section 7430(c)(2)(i). Section 7430(a) provides that in appropriate circumstances the prevailing party in the "civil proceeding" brought in a court of the United States may be awarded attorney's fees. Section 7430(c)(2)(A)(i) provides that to be awarded costs, the prevailing party must show that the position of the United States "in the civil proceeding" was unreasonable. The language of the statute therefore establishes that it is respondent's position in the civil proceeding brought in this Court which should be the focus of our inquiry. We have interpreted such language in the statute to apply to respondent's *350 position during the litigation only. Baker v. Commissioner,83 T.C. at 827. The issuance of the collection letters herein does not constitute part of the litigation process and therefore has no bearing on whether the government's position in the civil proceeding was unreasonable. For the reasons discussed above, we hold that petitioner has failed to carry her burden of proof that respondent's position in the civil proceeding was unreasonable within the meaning of section 7430. [10] Having so held, we need not determine whether petitioner has substantially prevailed with respect to the amount in controversy or the most significant issue presented. It is also unnecessary for us to decide whether the amount of costs requested in petitioner's motion is reasonable. *351 To reflect the foregoing, An appropriate order and decision will be issued.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Section 7430 was enacted on September 3, 1982, as part of the Tax Equity and Fiscal Responsibility Act of 1982 and applies generally to civil actions or proceedings commenced after February 28, 1983. Section 7430(e) provides that "An order granting or denying an award for reasonable litigation costs * * * shall be incorporated as a part of the decision or judgment in the case * * *." Rule 231(c)↩ requires that a motion for an award of reasonable litigation costs be accompanied by a stipulation "setting forth the terms of the settlement as to each [issue in the case which has been settled by the parties]." Therefore, a stipulation document required herein must be tailored to allow the incorporation in the decision or judgment of the court of the order granting or denying litigation costs.
3. Section 43(a)↩, as in effect for the years in issue, provides for a credit against taxes in an amount equal to 10 percent "of so much of the earned income for the taxable year as does not exceed $5,000." 4. Under section 43(b)↩, the amount of the earned income credit is decreased to zero if the taxpayer's adjusted gross income is $10,000 or more. Although the parties did not explicitly so state, it appears that the adjustments made by respondent in the notice of deficiency increased petitioner's adjusted gross income for 1979 to an amount exceeding $10,000 and therefore, respondent disallowed the earned income credit claimed by petitioner. 5. Respondent apparently relied on section 6201(a)(4), as in effect during the years at issue, which generally allows respondent to assess an amount of overstated earned income credit under section 43↩ without the issuance of a statutory notice of deficiency.
6. Section 7430 provides, in pertinent part: (a) In General. -- In the case of any civil proceeding which is -- (1) brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, and (2) brought in a court of the United States (including the Tax Court and the United States Claims Court), the prevailing party may be awarded a judgment for reasonable litigation costs incurred in such proceeding. * * * (c) Definitions. -- For purposes of the section -- (1) Reasonable Litigation Costs. -- (A) In General. -- The term "reasonable litigation costs" includes -- (i) reasonable court costs, (ii) the reasonable expenses of expert witnesses in connection with the civil proceeding, (iii) the reasonable cost of any study, analysis, engineering, report, test, or project which is found by the court to be necessary for the preparation of the party's case, and (iv) reasonable fees paid or incurred for the services of attorneys in connection with the civil proceeding. (B) Attorney's Fees. -- In the case of any proceeding in the Tax Court, fees for the services of an individual (whether or not an attorney) who is authorized to practice before the Tax Court shall be treated as fees for the services of an attorney. (2) Prevailing Party. -- (A) In General. -- The term "prevailing party" means any party to any proceeding described in subsection (a) (other than the United States or any creditor of the taxpayer involved) which -- (i) establishes that the position of the United States in the civil proceeding was unreasonable, and (ii)(I) has substantially prevailed with respect to the amount in controversy, or (II) has substantially prevailed with respect to the most significant issue or set of issues presented. (b) Determination as to prevailing party. -- Any determination under subparagraph (A) as to whether a party is a prevailing party shall be made -- (i) by the court, (ii) by agreement of the parties. * * *↩
7. Among the factors to be considered are the circumstances of the parties, duration of the marriage, and a history of contributions to the marriage by each party. Neb. Rev. Stat., sec. 42-365↩ (1984).
8. See Spirtis v. Commissioner,T.C. Memo. 1985-44↩.
9. See Spirtis v. Commissioner,supra.↩
10. We have considered Powell v. Commissioner,791 F.2d 385 (5th Cir. 1986), remanding a Memeorandum Opinion of this Court, wherein the Fifth Circuit held that the inquiry under section 7430 should focus on the Commissioner's position at the time the taxpayer's petition was filed. We find Powell v. Commissioner,supra,↩ inapplicable herein. From the record, respondent had not acted unreasonably at the time of the filing of the petition and did not maintain an arbitrary position so as to force petitioner to file suit. On the contrary, respondent acted reasonably, especially in view of the "whipsaw" nature of the issues involved.